UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT D. BUHL,

    Plaintiff,                                  Civil Action No. 12-10087

          v.                              District Judge Bernard A. Friedman
                                         Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert D. Buhl brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. The parties have filed cross-motions for summary judgment. Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Doc. #18] be DENIED, and that Plaintiff's Motion for Summary Judgment [Doc. #13] be GRANTED, remanding the case for an award of benefits.

## PROCEDURAL HISTORY

On June 25, 2010, Plaintiff applied for DIB, alleging disability as of June 4, 2010 (Tr. 89-90). After the initial claim denial, Plaintiff requested an administrative hearing, held on April 20, 2011 in Mt. Pleasant, Michigan (Tr. 32). Administrative Law Judge ("ALJ") Mark B. Greenberg presided. Plaintiff, represented by Mikel Lupisella, testified (Tr. 35-50), as did Vocational Expert ("VE") Mark Richards (Tr. 51-56). On May 10, 2011, ALJ

Greenberg found Plaintiff not disabled (Tr. 27-28 ). On December 15, 2011, the Appeals Council denied review (Tr. 1-6). Plaintiff filed the present action on January 9, 2012.

## BACKGROUND FACTS

Plaintiff, born November 28, 1958, was 52 at the time of the administrative decision (Tr. 28, 89). He completed 12th grade and training as a carpenter journeyman (Tr. 104). He worked previously as a carpenter (Tr. 104). He alleges disability as a result of heart problems and herniated cervical discs (Tr. 103).

### A.     Plaintiff's Testimony

Plaintiff began his testimony by denying that he had collected unemployment benefits since the alleged disability onset date of June 4, 2010 (Tr. 36). He reported that he currently lived in a one-story ranch with his wife and two cats (Tr. 36-37). He stated that he held a valid driver's license (Tr. 37). Plaintiff testified that on a typical day, he arose between five and seven in the morning, made coffee, sat in a reclining chair for awhile, then fed his cats and walked around outside (Tr. 37). He stated that due to neck and back problems, he was unable to sit for more than 20 to 30 minutes at a stretch (Tr. 37). He reported that he performed light household chores such as vacuuming and dishwashing, but denied doing laundry chores or cooking (Tr. 38). He stated that as a result of heart damage sustained in an earlier heart attack, climbing the basement stairs caused shortness of breath (Tr. 39). Plaintiff indicated that he made shopping trips with his wife two to three times a month and also attended therapy and doctor's appointments regularly (Tr. 39-40). He denied socializing with friends, adding that he visited with family members on rare occasions (Tr. 40).

Plaintiff stated that since undergoing neck surgery in December, 2010, his migraine headaches had resolved, but he now experienced numbness in the left arm and fingers (Tr. 40). He expressed hope that his current therapy would alleviate the numbness (Tr. 40). On

a scale of one to ten, he rated his pain level as a "five" when reclining and "eight to ten" when moving around (Tr. 41). He reported limited relief from pain medication, adding that his heart medication created the side effects of dizziness and light-headedness (Tr. 41). He alleged that he was unable to stand or walk for more than two hours each day due to neck pain (Tr. 41). He noted that he had been restricted to 10 pounds lifting since his heart attack in 2007 (Tr. 42-43).

Plaintiff opined that he would be unable to perform any work even if permitted to change positions (Tr. 43). He stated that he experienced discomfort driving for short distances (Tr. 43) He reiterated that he experienced shortness of breath from climbing stairs and carrying objects, adding that shortness of breath required him to take a nitroglycerin pill approximately once every two weeks (Tr. 44). He noted that his former work also caused stress, testifying that before he stopped work, he was required to take several nitroglycerin pills every day (Tr. 44-45).

In response to questioning by his attorney, Plaintiff testified that during the middle of 2009, fatigue and shortness of breath required him to leave work in the middle of a shift (Tr. 48). He noted that subsequent medical testing showed that he had sustained significant heart damage (Tr. 48). Plaintiff reported that before undergoing neck surgery in 2010, he experienced daily migraines due to cervical nerve root impingement, but stated that surgery eliminated the headaches (Tr. 49). He stated that additional surgery had been considered to correct other cervical and thoracic spine problems (Tr. 49-50). Plaintiff indicated that he cut the lawn with a riding mower, noting that he and his wife shared the lawn-mowing chores (Tr. 50). He denied shoveling snow (Tr. 50).

### B.     Medical Evidence

#### 1. Treating Sources

In April, 2009, cardiologist Shiraz H. Shariff, M.D. observed that a recent EKG showed a number of blocked arteries and damage as a result of an earlier heart attack (Tr. 159). In July, 2009, Plaintiff reported shortness of breath and dizziness (Tr. 226). The same month, an MRI of the cervical spine showed a herniation at T1-T2 and nerve root impingement in multiple areas (Tr. 312). In August, 2009, Plaintiff's ejection fraction was measured at 38 percent and in September, 2009 at 30 percent[1] (Tr. 167, 267). An angioplasty was performed in August, 2009 without complications (Tr. 161, 189, 329). In November, 2009, Dr. Shariff noted that the stent placement had not addressed all of Plaintiff's artery blockage (Tr. 157, 331). In June, 2010, Plaintiff complained of dizziness and shortness of breath (Tr. 154-155). Dr. Shariff, noting Plaintiff's history of myocardial infarction, cardiac stents, and ischemic cardiomyopathy, opined that the current symptoms could be attributable to a combination of cardiomyopathy and chronic obstructive pulmonary disease ("COPD") (Tr. 155, 323). He advised Plaintiff to stay off work until further evaluation and treatment (Tr. 155). The same month, treating physician Dr. Naveed Mahfooz, M.D. advised Plaintiff not to lift more than 20 pounds "pending further evaluation" (Tr. 325). An EKG from the same month showed an ejection fraction of 35 percent (Tr. 168, 265). The heart systolic function was deemed moderately impaired (Tr. 169, 266). Objective testing showed moderate obstructive airway disease (Tr. 176, 259). An MRI of the cervical spine performed the same month showed nerve root impingement at C3-C4, C5-C6, and C6-C7 (Tr. 308, 352).

---

[1]"Ejection fraction" is a measure of the left ventricle's ability to pump blood. *Diamond v. Commissioner of Social Sec.* 154 Fed.Appx. 478, 480, 2005 WL 3077132, *1 (6th Cir. November 16, 2005).

July, 2010 imaging studies showed stenosis of the cervical spine at C5-C6 and C6-C7, with severe degenerative changes at C3-C4 (Tr. 196, 307, 353). The same month, Naman A. Salibi, M.D. performed an evaluation of Plaintiff's cervical spine condition, recommending the use of a soft cervical collar during the day and a therapeutic pillow for sleeping (Tr. 318, 359). The following month, Dr. Salibi noted that Plaintiff obtained some relief from steroid injections administered by Dr. Mahfooz (Tr. 355). In September, 2010, Dr. Shariff found Plaintiff's cardiac condition stable (Tr. 362).

In December, 2010, Dr. Salibi performed a canal decompression of the cervical spine, noting a history of "severe cervical spondylosis" and "severe and intractable posterior neck pain" (Tr. 367). The procedure was performed without complications (Tr. 367-368). The following month, Plaintiff reported that his headaches had resolved (Tr. 375). In March, 2011, Dr. Salibi noted that Plaintiff continued to experience neck and shoulder pain as well as left finger numbness (Tr. 373). Dr. Salibi prescribed physical therapy (Tr. 373). Imaging studies of the cervical spine were unremarkable except for mild hypertrophic changes at C-7-T1 (Tr. 389). In April, 2011, Dr. Mahfooz completed an assessment of Plaintiff's work-related activities, finding that Plaintiff was unable to carry even 10 pounds or stand or walk for two hours in an eight-hour workday due to spinal stenosis (Tr. 366).

### 2. Non-Treating Sources

In August, 2010, Robert Nelson, M.D. reviewed Plaintiff's treating records on behalf of the SSA (Tr. 343-351). He found Plaintiff capable of lifting 20 pounds occasionally and 10 frequently; standing or walking for six hours in an eight-hour workday; and an unlimited ability to push and pull (Tr. 348). Dr. Nelson found the absence of postural, manipulative, visual, or communicative limitations but found that Plaintiff should avoid hazards (Tr. 348). Dr. Nelson found Plaintiff not disabled (Tr. 350).

### C. Vocational Expert Testimony

VE Mark Richards categorized Plaintiff's past relevant work as a carpenter as skilled and exertionally heavy (very heavy as performed)[2] (Tr. 51). The ALJ posed the following set of hypothetical limitations to the VE, taking into account Plaintiff's age, education, and past relevant work:

> Is able to perform light work with occasional postural activities, frequent overhead work on the right, occasional work overhead on the left. No concentrated exposure to extremes of temperature, humidity, lung irritants or hazards (Tr. 52).

The VE testified that given the above limitations, the individual would be unable to perform Plaintiff's past relevant work, but could perform the light, unskilled work of a bench assembler (10,872 jobs in the regional economy); storage facility rental clerk (3,147); and textile inspector (5,906) (Tr. 53).

The VE stated that if the individual were additionally limited by (1) only occasional (rather than frequent or constant) overhead work on the right (2) no overhead work on the left (3) frequent reaching on the left (4) no work involving extreme motions of the neck and, (4) allowing the neck to be comfortably positioned throughout the workday, the individual could perform a range of light work as an inspector, tester, sorter, or sampler (5,813); packager (9,274); plastic design applier (34); and labeler (10,872) (Tr. 53-55). The VE

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

stated that Plaintiff's job skills were not transferable to any sedentary positions (Tr. 56). She stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 55).

### D. The ALJ's Decision

Citing the medical records, the ALJ acknowledged that Plaintiff experienced the severe impairments of "ischemic heart disease, status-post myocardial infarction with stenting; cervical spinal stenosis, degenerative disc disease, status-post cervical fusion; chronic obstructive pulmonary disease; and cardiomyopathy" but that none of the conditions met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr.19). The ALJ found that Plaintiff retained residual functional capacity ("RFC") for light work with the following additional limitations:

> occasional postural limitations with no climbing or ropes, ladders, or scaffolds; he is limited to occasional right upper extremity overhead work, no left upper extremity overhead work, frequent reaching with the left extremity and no extremes of neck motion, keeping his head held in comfortable position; lastly, he is to have no concentrated exposure to temperature extremes, humidity, lung irritants, or hazards (Tr. 20).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the jobs of inspector, packager, and labeler (Tr. 28).

The ALJ discounted Dr. Mahfooz's April, 2011 disability opinion, finding that the treating records did not support the finding that Plaintiff was incapable of even sedentary work (Tr. 24). The ALJ also discounted Dr. Shiraff's June, 2010 work restrictions, stating that the followup studies supported the inference that the cardiologist lifted the restrictions at a later point (Tr. 25). The ALJ found that Plaintiff's ability to shop, walk, watch television, and mow the lawn was inconsistent with allegations of disability (Tr. 25).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Step Three Determination

Plaintiff argues first that the ALJ's Step Three finding was not supported by substantial evidence. *Plaintiff's Brief* at 3-6, *Docket #13.*  Plaintiff points out that the finding that he did not experience nerve root impingement is flatly contradicted by objective studies showing herniation, stenosis, and nerve root impingement of the cervical spine.  *Id.* (citing Tr. 20, 312, 352, 383-384). Plaintiff notes that these studies were accompanied by clinical observations of a limited range of motion, absent reflexes, and upper extremity pain (Tr. 359, 381-382).

"A Claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits." *Reynolds v. Commissioner of Social Security,* 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011);  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (citing 20 C.F.R. § 404.1525(a)).   Listing 1.04,

-9-

*Disorders of the spine,* requires, in applicable part, evidence showing "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" *and* "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss . . ." 20 CFR Pt. 404, Subpt. P, App. 1.

Plaintiff is correct that the record contains evidence showing spinal stenosis and evidence of nerve root compression creating pain, range of motion limitations, and reflex loss. The ALJ's statement that there was no evidence of nerve root compression is clearly erroneous. Notwithstanding this mis-statement, the ALJ's primary rationale for finding that the cervical spine condition did not meet Listing 1.04 appears to be that the cervical spine condition did not meet the 12-month durational requirement for establishing disability (Tr. 21); 42 U.S.C. §423(d)(1)(A). The ALJ noted, in effect, that Plaintiff's December, 2010 spinal surgery occurred only six months after the alleged onset date.

To be sure, Plaintiff testified that the surgery resulted in the immediate cessation of his migraine headaches. However, the ALJ's inference that the spine problems were resolved in December, 2010 does not factor in the March, 2011 reports that Plaintiff continued to experience significant neck and shoulder pain as well as left arm and finger numbness (Tr. 373). Non-MRI imaging studies from the same period show hypertrophic changes at C-7-T1, suggesting at the very least the possibility of remaining nerve root impingement (Tr. 389). Plaintiff testified in April, 2011 that additional surgery had already been considered to correct additional cervical and thoracic spine problems (Tr. 49-50). Dr. Salibi, observing

range of motion limitations and tenderness, found Plaintiff's March, 2011 complaints credible enough to prescribe physical therapy (Tr. 373).

Because the ALJ did not consider the import of the post-surgery reports, Plaintiff would at a minimum be entitled to a remand for reconsideration at Step Three. However, as discussed in the following section, the Commissioner did not meet the Step Five burden of showing that Plaintiff retained the RFC to perform work in the national economy. Therefore, Plaintiff is entitled to a remand for an award of benefits, mooting the Step Three error.

### B.  The Step Five Determination

The deficiencies in the ALJ's Step Five determination that Plaintiff could perform jobs in the "light" exertional category begin with Plaintiff's argument that the ALJ failed to provide good reasons for rejecting Dr. Mahfooz's April 11, 2011 disability opinion. *Plaintiff's Brief* at 6-11 (citing Tr. 24-25).

"[I]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544  (6th Cir. 2004)).  Further,

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion.  *Wilson,* at 544.

The treating physician analysis in this case founders on erroneous findings and mis-characterizations of the record. The ALJ rejected Dr. Mahfooz's finding that neck problems

created disability on the basis that the evidence did not show that the condition could be expected to last 12 months (Tr. 23). However, as discussed above, this conclusion is based on the mis-characterization of the March, 2011 records which showed continued and significant cervical spine problems. Likewise, the statement that Dr. Mahfooz was unqualified to opine on neurologically related issues (Tr. 23) is contradicted by record evidence showing that this long-term treating physician received and reviewed copies of the neurological and cardiological reports created by the specialists. Because Dr. Mahfooz was privy to Plaintiff's entire medical history, his assessment of Plaintiff's functional abilities would be entitled to amplified, rather than diminished weight. *Hensley, supra.*

The ALJ's reliance on Dr. Nelson's non-examining assessment is also questionable, given that it was created in August, 2010, and did not have benefit of Dr. Salibi's subsequent December, 2010 pre-operative findings that Plaintiff experienced "severe and intractable posterior neck pain," or March, 2011 evidence showing that Plaintiff experienced finger numbness[3] (Tr. 367, 373).

The ALJ's additional reasons for rejecting Dr. Mahfooz's opinions are largely based on a speculative view of the evidence. The ALJ discounted Dr. Mahfooz's April, 2011 opinion on the basis that Dr. Salibi prescribed "intensive physical therapy visits for up to three times a week for four weeks" (Tr. 24). However, while the record shows that Dr. Salibi prescribed physical therapy in response to Plaintiff's reports of continued shoulder and neck pain and the new symptom of finger numbness (Tr. 373), nothing in Dr. Salibi's treating

---

[3] Manipulative limitations created by finger numbness would be expected to further reduce the light job base. Thus, the failure to include manipulative limitations in the hypothetical question would also constitute error. *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987).

records show that the therapy was "intensive" or required Plaintiff to perform the equivalent of even sedentary work.

The ALJ also found that Plaintiff's activities of daily living contradicted Dr. Mahfooz's disability opinion, noting the admitted ability to walk, mow the lawn, shop, and watch television (Tr. 25). However, Plaintiff's ability to walk outside to feed the cat once or twice a day does not establish that he was capable of walking or standing six hours five days a week (Tr. 37). Plaintiff testified that he used a riding lawnmower and moreover, shared the lawn-mowing chores with his wife (Tr. 50). His ability to make short shopping trips with his wife two or three times a month does not undermine Dr. Mahfooz's disability opinion (Tr. 43). Likewise, I am not sure how Plaintiff's ability to "watch television" discredits the treating physician's finding.[4]

That the ALJ minimized the severity of Plaintiff's cardiac problems is also of concern. Plaintiff's statement that he experienced shortness of breath by simply climbing the basement stairs is well supported by objective testing showing that his ejection fraction averaged in the low 30s as a result of heart damage sustained in an earlier heart attack (167-168, 267). An ejection fraction is "used to measure the functioning of the blood-pumping

---

[4] Plaintiff's ability to perform some basic daily functions in spite of significant limitations does not translate into the ability to perform substantial gainful activity. *See Walston v. Gardner,* 381 F.2d 580, 586 (6th Cir. 1967)("The fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this appellant possesses an ability to engage in substantial gainful activity"); *Fulwood v. Heckler*, 594 F.Supp. 540, 543 (D.C.D.C. 1984)("The ALJ's finding that [Plaintiff's] performance of these [basic] activities renders his disability claim not credible is illogical and simply runs counter to common sense under the facts of this case"); *Cowart v. Comm. of Social. Sec.*, 2010 WL 1257343, *7-8 (E.D. Mich. 2010).

left ventricle." *Diamond v. Commissioner of Social Sec.* 154 Fed.Appx. 478, 480, 2005 WL 3077132, *1 (6th Cir. November 16, 2005). "A normal ejection fraction is greater than 55%, and an ejection fraction of below 30%, when accompanied by other symptoms, qualifies as a presumptive disability under the Act. *Id.* ; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02B (2005). While ejection fractions of 38, 30, and 35 might not meet Listing 4.02B, Plaintiff's reported symptoms of shortness of breath from climbing stairs and the need to take nitroglycerin pills approximately once every two weeks are supported by the consistently low ejection fractions (Tr. 44). The fact that the ejection fraction numbers were slightly better than those required to show presumptive disability does not establish or support the conclusion that he was capable of exertionally light work.[5]

The ALJ's reasoning is further muddled by the "significant weight" given "to Dr. Shiraff's ultimate opinion that the claimant is not disabled" (Tr. 25). In fact, Dr. Shiraff never stated that Plaintiff was not disabled, but instead, found in September, 2010 that the cardiac condition was "stable" (Tr. 362). Given that the ejection fractions consistently reflected significant heart damage, Dr. Shiraff's "stable" comment would be more reasonably interpreted to state that Plaintiff's condition was "not worsening." At no point did Dr. Shiraff state that Plaintiff was capable of full-time work.

---

[5] The Plaintiff did not raise arguments relating to the ejection factor in his summary judgment motion. However, that does not prevent the Court from identifying error based on its own review of the record, and ruling accordingly. "Once the complaint and a copy of the record are filed, the Court has before it all that is necessary to enter a judgment on the merits." *Wright v. Commissioner of Social Sec.*, 2010 WL 5420990, *2 (E.D.Mich. 2010). While the parties' summary judgment motions can be helpful, they "merely serve as vehicles for briefing the parties' positions, and are not a prerequisite to the Court's reaching a decision on the merits." *Id*.

These errors in the administrative decision are significant, and I cannot conclude that the Commissioner's Step Five determination is supported by substantial evidence. The ALJ's failure to support the RFC for light work is particularly significant because Plaintiff, 52 at the time of the hearing, was closely approaching advanced age. *Davis v. Secretary of Health and Human Services* 634 F.Supp. 174, 177 (E.D.Mich. 1986). As such, a finding that he was limited to unskilled, *sedentary* work would direct a finding of disability. *Id.* ("The 'grid,' Pt. 404, Subpt. P, App. 2, directs a finding of disabled if Plaintiff [closely approaching advanced age] has a residual functional capacity [ ] for only sedentary work, § 201.09, but not if his RFC is light. § 202.10"); *Scales v. Commissioner of Social Sec.,* 1996 WL 343533, *2 (6th Cir.1996).

In *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994), and *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994), the Sixth Circuit held that it is appropriate to remand for an award of benefits when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Faucher,* 17 F.3d at 176 (citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)).

Because there is no substantial evidence that this 52-year-old Plaintiff, who can't walk up a flight of stairs without being winded, can perform light work, he would necessarily be found disabled even if he were able to do sedentary work. *Scales, supra*. The record clearly establishes Plaintiff's entitlement to benefits, and the case should be remanded for that purpose.

# CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #18] be DENIED, and that Plaintiff's Motion for Summary Judgment [Doc. #13] be GRANTED, remanding this case for an award of benefits.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: February 13, 2013

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 13, 2013.

s/Johnetta M. Curry-Williams
Case Manager